UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

FILED
CLERK, U.S. DISTRICT COURT
JAN 21 2005
CENTRAL DISTRICT OF CALIFORNIA
BY DEPUTY

CURTIS A. HEMPHILL, II,

v.

M. YARBOROUGH, Warden.

CASE NUMBER

ED CV 03-0316 NM (FMO)

NOTICE OF FILING OF MAGISTRATE JUDGE'S
REPORT AND RECOMMENDATION

Priority
Send ✓
Enter
Closed
JS-5/JS-6
JS-2/JS-3
Scan Only

TO: All Parties of Record

Petitioner (pro se):

Curits A. Hemphill, II
P-01697
C.C.I. IVB 4C 206
P.O. Box 1031
Tehachapi, CA 93581

Counsel for Respondent:

Meagan J. Beale
Supervising Deputy Attorney General
110 West "A" Street, Ste. 1100
San Diego, CA 92101

You are hereby notified that pursuant to the Local Rules Governing Duties of Magistrate Judges, the Magistrate Judge's report and recommendation has been filed on **January 21, 2005**, a copy of which is attached.

Any party having objections to the report and recommendation shall, not later than **February 10, 2005**, file and serve a written statement of objections with points and authorities in support thereof before the Honorable **Fernando M. Olguin**, U.S. Magistrate Judge.

Failure to so object within the time limit specified shall be deemed a consent to any proposed findings of fact. Upon receipt of objections, or upon lapse of the time for filing objections, the case will be submitted to the District Judge for disposition. Following entry of judgment and/or order, all motions or other matters in the case will be considered and determined by the District Judge.

The report and recommendation of a Magistrate Judge is not a final appealable order. A notice of appeal pursuant to Federal Rules of Appellate Procedure 4(a)(1) should not be filed until entry of a judgment and/or order by the District Judge.

DOCKETED ON CM
JAN 21 2005
BY 053

CLERK, UNITED STATES DISTRICT COURT

Dated: 1-21-05

By _____
Patricia Clarke
Deputy Clerk

Attachment

M-51A   NOTICE OF FILING OF MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

FILED
CLERK, U S DISTRICT COURT
JAN 21 2005
CENTRAL DISTRICT OF CALIFORNIA
BY                    DEPUTY

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CURTIS A. HEMPHILL, | NO. ED CV 03-0316 NM (FMO) |
| Petitioner, | |
| v. | **REPORT AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE** |
| MIKE YARBOROUGH, Warden, | |
| Respondent. | |

This Report and Recommendation is submitted to the Honorable Nora M. Manella, United States District Judge, pursuant to the provisions of 28 U.S.C. § 636 and General Order 01-13 of the United States District Court for the Central District of California.

## INTRODUCTION

Petitioner, a California state prisoner proceeding pro se, filed a "Petition for Writ of Habeas Corpus by a Person in State Custody" ("Petition"), pursuant to 28 U.S.C. § 2254, on March 20, 2003, which the court dismissed with leave to amend on March 27, 2003. (Court's Order of March 27, 2003). Petitioner filed a First Amended Petition ("FAP") on May 16, 2003. Respondent filed his Return on December 17, 2003. Petitioner filed his Traverse on March 24, 2004.

Briefing deemed completed, the matter has been submitted and is now ready for decision. Having reviewed the allegations in the FAP and the matters set forth in the Return and the

Traverse, it is recommended that the FAP be denied and this action dismissed with prejudice as untimely.

**PRIOR PROCEEDINGS**

On June 22, 1998, in the Riverside County Superior Court, petitioner pled guilty to attempted first degree murder (Cal. Penal Code §§ 187/664), kidnaping (Cal. Penal Code § 207(a)), mayhem (Cal. Penal Code § 204), two counts of assault with a deadly weapon (Cal. Penal Code § 245(a)(2)), and admitted that he personally used a firearm in connection with the attempted murder (Cal. Penal Code § 12022.5(a)). (Lodgment at 9-11 & 331-32). He was sentenced to consecutive state prison terms of 20 years and life with the possibility of parole. (Id. at 10-11 & 331).

As a condition of his plea agreement, petitioner personally waived his right to appeal. (Lodgment at 10). On August 26, 1998, petitioner filed a notice of appeal (case no. E023380), which was dismissed by the California Court of Appeal as duplicative of another notice of appeal filed on September 30, 1998 (case no. E023555). (Id. at 8 & 309-10). The latter notice of appeal was dismissed on March 9, 1999, because petitioner did not obtain a certificate of probable cause as required by California Rule of Court 31(d).[1] (Id. at 309).

Petitioner filed the following documents in state court:

1. On May 18, 1999, petitioner submitted a petition for writ of mandate to the California Court of Appeal, which was denied on June 3, 1999 (case no. E025002). (Lodgment at 311-28).

2. On June 28, 1999, petitioner filed a petition for writ of mandate in the California Supreme Court (case no. SC080343), which was transferred to the court of appeal (case no. E023463), for a determination as to whether it was substantially identical to the petition filed in case no. E025002. (Lodgment at 329; Declaration of Meagan J. Beale, filed on December 15, 2003, at 3-4); see Hemphill v. Riverside Co. Sup. Ct., 1999 Cal. LEXIS 4630, *1 (July 8, 1999).

---

[1] On January 1, 2004, California Rule of Court 31(d) was repealed and recodified as California Rule of Court 30(b). Under former Rule 31(d), a defendant who pleads guilty must obtain a certificate of probable cause before attacking the validity of the guilty plea. See People v. Panizzon, 13 Cal.4th 68, 75-77 (1996) (discussing former Rule 31(d)).

2

The court of appeal dismissed the petition without citation on August 24, 1999. (Lodgment at 329).

3. On November 5, 1999, petitioner filed a petition for writ of coram vobis in the California Court of Appeal (case no. E026035),[2] which was denied without citation on December 1, 1999. (Lodgment at 330).

4. On February 1, 2000, petitioner submitted a petition for writ of coram vobis to the California Court of Appeal (case no. E026612), (Lodgment at 333-56), which was summarily denied on March 21, 2000.[3]

5. On December 12, 2000, petitioner filed a habeas petition in the California Court of Appeal (case no. E028513), which was summarily denied on January 10, 2001.[4]

6. On June 4, 2003, petitioner submitted a habeas petition to the California Supreme Court, which was denied as untimely on June 9, 2004. (Lodgment, Item 31 at 6); In re Curtis A. Hemphill, II, 2004 Cal. LEXIS 5100, *1 (June 9, 2004) (citing In re Robbins, 18 Cal.4th 770, 780 (1998)).

Petitioner submitted the instant Petition on February 27, 2003, some three months before he filed his habeas petition in the California Supreme Court. (Petition at 8).

### PETITIONER'S CONTENTIONS[5]

Petitioner raises the following claims in his First Amended Petition:

1. Petitioner was denied his right to counsel in violation of the Sixth and Fourteenth Amendments. (FAP at 5).

---

[2] The court obtained this information from the California Appellate Courts website, which provides case information for California Supreme Court and Court of Appeal cases. http://appellatecases.courtinfo.ca.gov/search/disposition.cfm?dist=42&doc_id=25972&div=2

[3] http://appellatecases.courtinfo.ca.gov/search/disposition.cfm?dist=42&doc_id=26549&div=2

[4] http://appellatecases.courtinfo.ca.gov/search/disposition.cfm?dist=42&doc_id=28449&div=2

[5] Petitioner articulates 12 grounds for relief. (FAP at 5-6 & 10). However, Grounds Five through Nine and Ground Eleven do not concern petitioner's state court conviction but rather address his desire for an evidentiary hearing, the inapplicability of the procedural bar and statute of limitations, and his right to sanctions. (Id. at 10).

3

2. Petitioner was sentenced as a first degree murderer even though he pled guilty to second degree murder. (Id.).

3. The appellate court violated petitioner's right to due process by dismissing his appeals. (Id. at 6).

4. The trial court violated petitioner's right to due process by denying his request for a court-appointed investigator, criminologist, and physician. (Id.).

5. Petitioner did not waive his constitutional rights before pleading guilty. (Id. at 10).

6. Petitioner was improperly denied legal assistance and necessary records. (Id.).

## DISCUSSION

I.   THE AEDPA LIMITATIONS PERIOD GOVERNS THE FAP.

The amendments to the federal habeas corpus statutes contained in the AEDPA became effective on April 24, 1996. The FAP, constructively filed on February 27, 2003, is therefore subject to the AEDPA. See Woodford v. Garceau, 538 U.S. 202, 211, 123 S.Ct. 1398, 1403 (2003) ("a case does not become pending until an actual application for habeas corpus is filed in federal court"); Lindh v. Murphy, 521 U.S. 320, 326, 117 S.Ct. 2059, 2063 (1997); Fuller v. Roe, 182 F.3d 699, 702 (9th Cir. 1999) (the filing date of a habeas petition "is the determinative date from which to judge the applicability of the AEDPA").

One of the major changes in habeas litigation wrought by the AEDPA was the imposition of a time limit on the filing of federal habeas petitions. See Calderon v. United States District Court (Beeler), 128 F.3d 1283, 1286 (9th Cir. 1997) ("[p]rior to AEDPA's enactment, state prisoners had almost unfettered discretion in deciding when to file a federal habeas petition"), overruled in part on other grounds, Calderon v. United States District Court (Kelly V), 163 F.3d 530, 540 (9th Cir. 1998). By creating the AEDPA limitations period, Congress intended to "'halt the unacceptable delay which has developed in the federal habeas process' [cit. om.]." Calderon v. United States District Court (Kelly III), 127 F.3d 782, 785 (9th Cir. 1997), overruled in part on other grounds, Kelly V, 163 F.3d at 540.

Under 28 U.S.C. § 2244(d)(1), as amended, state prisoners have one year in which to file their federal habeas petitions. The limitations period begins to run from the latest of: (A) the date

4

on which the underlying judgment became final through either the conclusion of direct review or the expiration of the time for seeking such review; (B) the date on which any impediment to the filing of a federal petition created by unconstitutional state action is removed; (C) the date on which a newly-recognized and retroactively applicable constitutional right was first recognized by the United States Supreme Court; or (D) the date on which the factual predicate underlying a claim could have been discovered through the exercise of due diligence. See 28 U.S.C. § 2244(d)(1)(A)-(D).

A. The Petition Is Facially Untimely.

In most instances, a state prisoner's AEDPA limitations period will be governed by § 2244(d)(1)(A). It is only in "rare instances" that, pursuant to §§ 2244(d)(1)(B)-(D), "the limitation period may run from a date later than the date on which judgment became final." Baker v. California, 2000 WL 74071 at *1 (N.D. Cal. 2000). Here, respondent contends that the limitations period is governed by § 2244(d)(1)(A). (See Answer at 13-14 & n. 4). Petitioner does not dispute the applicability of § 2244(d)(1)(A). (See FAP at 38-40; Traverse at 4-5). Moreover, there is nothing in the record to suggest that §§ 2244(d)(1)(B)-(D) would apply to petitioner's case.

Petitioner did not appeal his conviction. Accordingly, his judgment became final on August 22, 1998, 60 days after he was sentenced on June 22, 1998.[6] Lewis v. Mitchell, 173 F.Supp.2d 1057, 1060 (C.D. Cal. 2001) (citing Cal. Rule of Court 31(d)). Accordingly, under § 2244(d)(1)(A), petitioner had until the one year "anniversary" date of **August 22, 1999**, in which to file his federal habeas petition. See 28 U.S.C. § 2244(d)(1)(A). Even if the court were to apply the "mailbox rule"

---

[6] Because petitioner was convicted upon a guilty plea, his appeal rights were limited under California law in that he could appeal only if he obtained a certificate of probable cause. Palacios v. Myers, 2001 U.S. Dist. LEXIS 15441, *3 (N.D. Cal. Sept. 24, 2001); Panizzon, 13 Cal.4th at 75-77; People v. Castelan, 32 Cal. App.4th 1185, 1188 (1995). In addition, because petitioner's request for a certificate of probable cause was denied – the denial of which is nonappealable – petitioner's direct review process ended and his conviction became final 60 days after he was sentenced. See Palacios, 2001 U.S. Dist. LEXIS 15441 at *3-*4 (California state judgment of conviction upon a guilty plea final 60 days after sentencing).

5

of Houston v. Lack, 487 U.S. 266, 270, 108 S.Ct. 2379, 2382 (1988),[7] and use the February 27, 2003, signature date on the Petition (Petition at 8) as the filing date, the Petition would still be untimely by over three years.

B. <u>Petitioner Is Entitled To Statutory Tolling</u>.

The running of AEDPA's one year time limitation is tolled for the time period during which a properly filed application for post-conviction or other state collateral review is pending in state court. Jenkins v. Johnson, 330 F.3d 1146, 1149 (9th Cir. 2003); see 28 U.S.C. § 2244(d)(2). "[A]n application is pending as long as the ordinary state collateral review process is 'in continuance' – i.e., 'until the completion of' that process. In other words, until the application has achieved final resolution through the State's post-conviction procedures, by definition it remains 'pending.'" Carey v. Saffold, 536 U.S. 214, 219-20, 122 S.Ct. 2134, 2138 (2002); Nino v. Galaza, 183 F.3d 1003, 1006 (9th Cir. 1999), cert. denied, 529 U.S. 1104, 120 S.Ct. 1846 (2000) (statute is tolled from "the time the first state habeas is filed until the California Supreme Court rejects the petitioner's final collateral challenge"). In addition, the Ninth Circuit, in discussing Carey, stated that "[t]he Supreme Court construed statutory tolling in the context of California law to allow 'one full round,' not two full rounds." Welch v. Carey, 350 F.3d 1079, 1083 (9th Cir. 2003), cert. denied, 124 S.Ct. 2423 (2004).

"[T]he first round of review remains pending, and tolling does not end until that round is completed at the California Supreme Court, as long as petitioner does not delay unreasonably, even if the petitioner begins a new round while that round is still pending." Delhomme v. Ramirez, 340 F.3d 817, 820 (9th Cir. 2003). "[I]f there is any gap between the completion of one round of

---

[7] In Houston, the Supreme Court held that an incarcerated pro se prisoner's notice of appeal is deemed filed at the moment of delivery to prison authorities for forwarding to the court clerk. 487 U.S. at 276, 108 S.Ct. at 2385. This rule also applies to habeas petitions for purposes of satisfying the AEDPA's statute of limitations. Ford v. Hubbard, 330 F.3d 1086, 1097 (9th Cir. 2003), rev'd on other grounds sub nom. Pliler v. Ford, 124 S.Ct. 2441 (2004) ("According to the prisoner's mailbox rule, Ford's petitions are deemed 'filed' for purposes of AEDPA's statute of limitations the moment that he delivers them to the prison authorities for forwarding to the clerk of the district court.").

1   review and the commencement of another round of state habeas review, the petitioner is not
2   entitled to tolling during the gap." Id. at 821.
3   Here, petitioner is entitled to tolling while his two petitions for writ of coram vobis[8] were
4   pending, i.e., from November 5, 1999 to December 1, 1999 and from January 28, 2000 to March
5   21, 2000. See In re Clark, 5 Cal.4th 750, 779 (1993) (petitioner may collaterally attack conviction
6   through petition for writ of coram nobis); People v. Miller, 219 Cal.App.2d 124, 126 (1963) ("In
7   California, there is no statutory authority for the writ, but it is a court-made proceeding which
8   constitutes a collateral attack."); see also Brown v. Shannon, 322 F.3d 768, 775 (3rd Cir. 2003)
9   (collateral relief includes writs of habeas corpus and coram nobis); Pratt v. Greener, 306 F.3d
10  1190, 1995 (2nd Cir. 2002) (limitations period tolled while coram nobis petition pending).
11  Petitioner, however, is not entitled to tolling for the period during which his notices of appeal
12  and petitions for writ of mandate were pending. Notices of appeal and petitions for writ of
13  mandate do not toll the limitations period because they are not "application[s] for State
14  post-conviction or other collateral review with respect to the pertinent judgment or claims" within
15  the meaning of § 2244(d)(2). Johnson v. Lewis, 310 F.Supp.2d 1121, 1125 (C.D. Cal. 2003)
16  (petition for writ of mandate was not directed at underlying conviction and sentence); Hardiman
17  v. Galaza, 2001 U.S. Dist. LEXIS 25075, *7-*8 (C.D. Cal. April 27, 2001), aff'd 2003 WL 731395,
18  2003 U.S. App. LEXIS 3797 (9th Cir.), cert. denied, 540 U.S. 884, 124 S.Ct. 209 (2003) (same).
19  Similarly, petitioner is not entitled to tolling for his attempts to file various state court
20  applications for post-conviction relief. Petitioner claims that he submitted "numerous petitions"
21  to the California Supreme Court, which were returned unfiled with "various procedural instructions
22  that petitioner attempted to comply with." (Traverse at 11). He states that he made "more than
23  20 submissions in the state court related to this case and more than 15 submissions in [2003.]"
24  (Id. at 21). Other than the state court filings listed supra at 2-3, the court is unaware, and
25  petitioner submitted no evidence, of any other petitions filed in the California state courts. Thus,
26
27
    ---
28  [8] Under California law, a writ of coram vobis is identical to a writ of coram nobis, except that the latter is addressed to the trial court. People v. Welch, 61 Cal.2d 786, 791 (1964).

assuming, as petitioner claims, that he attempted to file several habeas petitions in the state courts, the petitions – to the extent they were rejected by the state courts as procedurally improper -- were not "properly filed" for purposes of tolling the statute of limitations. See Dictado v. Ducharme, 189 F.3d 889, 892 (9th Cir. 1999) (a "properly filed application" under § 2244(d)(2) means "an application submitted in compliance with the procedural laws of the state in which the application was filed."); Chavis v. LeMarque, 382 F.3d 921, 924 (9th Cir. 2004) (petitions that were eventually denied for procedural reasons were not "pending" even while the petitions were under submission).

Finally, petitioner is not entitled to tolling for the interval between the denial of his first coram vobis petition on December 1, 1999, and the constructive filing of his second coram vobis petition on January 28, 2000, because both petitions were filed in the state court of appeal. In other words, because petitioner did not seek review by a higher state court, the limitations period is not tolled. See Chavis, 382 F.3d at 925 (tolling only for interval between lower court decision and filing of a new petition in a higher court) (citing Saffold, 536 U.S. at 222, 122 S.Ct. at 2139).

As noted earlier, petitioner had until **August 22, 1999**, to timely file the Petition. Because petitioner is not entitled to statutory tolling while pursuing his appeal and petitions for writ of mandate, the statute of limitations had already expired by the time he filed his first coram vobis petition on November 5, 1999. Thus, there was no application for post-conviction or other state collateral review pending during the one year period, and thus no entitlement to statutory tolling. See Laws v. Lamarque, 351 F.3d 919, 922 (9th Cir. 2003) (because petitioner "did not file his first state petition until after his eligibility for federal habeas had already lapsed, statutory tolling cannot save his claim in the first instance"); Jiminez v. Rice, 276 F.3d 478, 482 (9th Cir. 2001), cert. denied, 538 U.S. 949, 123 S.Ct. 1627 (2003) (filing of first state petition after AEDPA statute of limitation ended is "absolute time bar to refiling after state claims" are exhausted).

///
///
///
///

1    Finally, even assuming the limitations period was tolled while petitioner's petitions for writ of mandate were pending,[9] the Petition would still be untimely. If the 98 days between the constructive filing of the first writ of mandate petition on May 18, 1999, and the August 24, 1999, denial of his second mandate petition are tolled, petitioner would have had until November 29, 1999, to file the Petition. Because petitioner filed his first coram vobis petition before the limitations period expired, he is entitled to statutory tolling while his first coram vobis petition was pending, i.e., from November 5, 1999, to December 1, 1999.[10] Thus petitioner had until December 25, 1999 – 26 days after November 29, 1999 – to file the Petition. The Petition was not constructively filed until February 27, 2003, more than three years late.

C.  Petitioner Is Not Entitled To Equitable Tolling.

"The one-year statute of limitations prescribed in the AEDPA may be equitably tolled if 'extraordinary circumstances beyond a prisoner's control make it impossible to file a petition on time.'" Brambles v. Duncan, 330 F.3d 1197, 1202 (9th Cir. 2003) (quoting Miles v. Prunty, 187 F.3d 1104, 1107 (9th Cir. 1999)); Spitsyn v. Moore, 345 F.3d 796, 799 (9th Cir. 2003). However, "equitable tolling is unavailable in most cases." Miles, 187 F.3d at 1107; Corjasso v. Ayers, 278 F.3d 874, 877 (9th Cir. 2002); see also Beeler, 128 F.3d at 1288-89 ("Equitable tolling will not be available in most cases as extensions of time will only be granted if 'extraordinary circumstances' beyond a prisoner's control make it impossible to file a petition on time."). It applies "only where external forces, rather than a petitioner's lack of diligence, account for the failure to file a timely claim." Guillory v. Roe, 329 F.3d 1015, 1018 (9th Cir. 2003), cert. denied, sub nom Guillory v. Yarborough, 124 S.Ct. 449 (2003) (even though district court erroneously denied petitioner's

---

[9] As noted earlier, a petition for writ of mandate does not toll the statute of limitations because it is not considered to be an application for post-conviction relief. Johnson, 310 F.Supp.2d at 1125 (petition for writ of mandate was not directed at underlying conviction and sentence).

[10] Because petitioner's second coram vobis petition was also filed in the California Court of Appeal, he is not entitled to interval tolling between the two coram vobis petitions. See Chavis, 382 F.3d at 925. Similarly, petitioner is not entitled to tolling while his second coram vobis and subsequent state court habeas petitions were pending because they were all filed after the statute of limitations had expired. Laws, 351 F.3d at 922.

9

1  motion to strike unexhausted portions of petition, equitable tolling denied because petitioner was
2  not diligent in exhausting his claims). The Ninth Circuit has stated that "the threshold necessary
3  to trigger equitable tolling [under AEDPA] is very high, lest the exceptions swallow the rule."
4  Miranda v. Castro, 292 F.3d 1063, 1066 (9th Cir.), cert. denied, 537 U.S. 1003, 123 S.Ct. 496
5  (2002) (internal quotation marks and citation omitted); Beeler, 128 F.3d at 1288-89 (application
6  of equitable tolling imposes a "high hurdle" on petitioners and cautioned district courts to be
7  mindful of Congress's desire to accelerate the federal habeas process).

8        Petitioner concedes that "there is an approximate 2-year time period that has elapsed from
9  the time petitioner was through litigating his issues in the California Supreme Court until currently
10 where there has been no litigation." (FAP at 38). Petitioner, however, asserts that he is entitled
11 to equitable tolling because of prison lockdowns, lack of library access, and loss of legal property.
12 (Id. at 38-40; Traverse at 5). He also alleges that the limitations period is inapplicable because
13 he is actually innocent of the charges to which he pled guilty. (FAP at 42-44; Traverse at 6-9).
14 Petitioner's contentions are unpersuasive for several reasons. First, the prison lockdowns,
15 lack of library access, and property deprivation of which petitioner complains occurred in 2001 and
16 2002, more than a year after the AEDPA limitations period expired and, therefore, could not
17 constitute extraordinary circumstances preventing the timely filing of the Petition. (See FAP at 38-
18 40 & Exh. C at 2, 4 & 6-9). Second, even if such events were "timely," they are not considered
19 extraordinary circumstances for purposes of equitable tolling. United States v. Van Poyck, 980
20 F.Supp. 1108, 1111 (C.D. Cal. 1997) ("Brief security lockdowns, however, could hardly be
21 characterized as an 'extraordinary circumstance.'"); Lindo v. Lefever, 193 F.Supp.2d 659, 663
22 (E.D.N.Y. 2002) ("[T]ransfers between prison facilities, solitary confinement, lockdowns, restricted
23 access to the law library and an inability to secure court documents [generally] do not qualify as
24 extraordinary circumstances.").

25       Finally, even assuming the actual innocence "gateway" can override the statute of
26 limitations imposed by the AEDPA, see Majoy v. Roe, 296 F.3d 770, 776-77 (9th Cir. 2002)
27 (declining to decide the issue), petitioner's claim of actual innocence fails. In support of his actual
28 innocence claim, petitioner relies on the underlying claims in his FAP, i.e., that his guilty plea was

coerced and that he was denied expert and investigatory assistance. (See FAP at 42-44; Traverse at 6-9). Because a petitioner's claim of actual innocence is "'a gateway through which a habeas petitioner must pass to have his otherwise barred constitutional claim considered on the merits,'" Schlup v. Delo, 513 U.S. 298, 315, 115 S.Ct. 851, 861 (1995) (internal citation omitted), petitioner cannot establish a claim of actual innocence by simply relying on his underlying claims.

In any event, petitioner has not submitted any evidence, let alone "new" evidence, which is sufficient to raise a colorable claim of actual innocence. See Schlup, 513 U.S. at 316, 115 S.Ct. at 861 ("Without any new evidence of innocence, even the existence of a conceitedly meritorious constitutional violation is not in itself sufficient to establish a miscarriage of justice that would allow a habeas court to reach the merits of a barred claim."). That is, petitioner has not presented any new evidence which establishes that it is "more likely than not that no reasonable juror would have convicted him in the light of the new evidence." See id. at 327-28, 115 S.Ct. at 867; compare Carriger v. Stewart, 132 F.3d 463, 477-79 (9th Cir. 1997) (petitioner satisfied Schlup gateway standard where he presented a sworn statement from a third party confessing to the crime for which the petitioner was convicted) with Gandarela v. Johnson, 286 F.3d 1080, 1086-87 (9th Cir. 2002) (declarations from two witnesses, neither of whom "had any direct information regarding the crime," "was not sufficient to make it more likely than not that no reasonable juror would have found [petitioner] guilty and thus make a colorable claim of actual innocence").

Finally, petitioner attempts to support his actual innocence claim by citing Bousley v. United States, 523 U.S. 614, 118 S.Ct. 1604 (1998). (Traverse at 6). In Bousley, the petitioner pled guilty to "using" a firearm (18 U.S.C. § 924(c)(1)) "during and in relation to a drug trafficking crime" (21 U.S.C. § 841(a)(1)). 523 U.S. at 616, 118 S.Ct. at 1608. In a § 2255 habeas petition, Bousley challenged the factual basis for his guilty plea on the ground "that neither the evidence nor the plea allocution showed a connection between the firearms in the bedroom of the house, and the garage, where the drug trafficking occurred." Id. at 617, 118 S.Ct. at 1608 (internal quotations omitted). His petition was denied and petitioner appealed. Id.

While Bousley's appeal was pending, the Supreme Court held that a conviction for use of a firearm under 18 U.S.C. § 924(c)(1) required a showing of "active employment of a firearm"

11

rather than "merely . . . storing a weapon near drugs or drug proceeds" or "placement of a firearm to provide a sense of security or to embolden." Bousley, 523 U.S. at 617, 118 S.Ct. at 1608 (quoting Bailey v. United States, 513 U.S. 1377, 143-44 & 149, 116 S.Ct. 501, 505-06 & 508 (1995)). Bousley argued that Bailey should be applied retroactively to support a finding that his guilty plea was involuntary because he was "misinformed about the essential elements of a § 924(c)(1) offense[.]" Id. at 617-18, 118 S.Ct. at 1608. "In other words, petitioner contend[ed] that the record reveals that neither he, nor his counsel, nor the court correctly understood the essential elements of the crime with which he was charged." Id. at 618, 118 S.Ct. at 1609.

The Supreme Court did not reach the merits of Bousley's claim because it was procedurally defaulted due to petitioner's failure to raise it on direct review. Bousley, 523 U.S. at 621-22, 118 S.Ct. at 1610-11 ("[E]ven the voluntariness and intelligence of a guilty plea can be attacked on collateral review only if first challenged on direct review. Habeas review is an extraordinary remedy and will not be allowed to do service for an appeal.") (citations and quotations omitted). The Court, however, noted that petitioner's claim may be reviewed if he can establish actual innocence, i.e., "that in light of all the evidence, it is more likely than not that no reasonable juror would have convicted him." Id. at 623, 118 S.Ct. at 1611 (quoting Schlup, 513 U.S. at 327-28, 115 S.Ct. at 867) (internal quotations omitted). Accordingly, the Supreme Court remanded the case for further proceedings. Id. at 624, 118 S.Ct. at 1612.

Petitioner's reliance upon Bousley is misplaced. First, unlike Bousley, the issue here is whether the FAP was timely brought, not whether the court can entertain a procedurally defaulted claim. Neither the Supreme Court nor the Ninth Circuit has decided whether the statute of limitations may be overridden by a showing of actual innocence. See Majoy, 296 F.3d at 776.

Second, assuming that a showing of actual innocence can override the statue of limitations, Bousley is plainly inapplicable to the instant case. Petitioner asserts that, like Bousley, "the charge he is prison on is not the charge he accepted in the coerced plea bargain." (Traverse at 6). He alleges that "the reporter's transcript shows that he accepted a plea bargain for first degree attempted murder but . . . the minute order . . . shows that he accepted a plea bargain for second degree attempted murder and was sentenced to 9 years in prison." (Id.). In other words,

1  petitioner's actual innocence claim stems from the divergence between the offense for which he
2  claims he was convicted and the offense for which he was sentenced.
3       Petitioner's assertion is clearly belied by the record. As an initial matter, petitioner has not
4  identified, nor was the court able to find, anything in the record to support petitioner's contention,
5  (Traverse at 6-7), that he was sentenced to nine years for his guilty plea. Nevertheless, it is clear
6  that petitioner was indicted and charged with premeditated attempted murder, (Lodgment at 81),
7  and that he pled guilty to premeditated attempted murder. (Id. at 182). It is also clear that
8  petitioner received a sentence of 20 years plus life with the possibility of parole. (Id. at 174, 176-
9  77, 194, 196, 306 & 331-32). Although the abstract of judgment filed on June 24, 1998,
10 incorrectly indicated that petitioner pled guilty to second degree attempted murder (Cal. Penal
11 Code § 664/187), the sentence on the abstract was consistent with the sentence petitioner
12 received after he pled guilty, i.e., petitioner was "[s]entenced to State Prison for a total
13 Indeterminate sentence of 20 YEARS plus LIFE WITH PAROLE" for that offense. (Id. at 306).
14 Thus, the sentence imposed upon petitioner at the sentencing and in the abstract of judgment
15 were the same. (Id. at 306 & 331-32).
16      In any event, the abstract of judgment was eventually corrected to read "1st degree" and,
17 again, the sentence was the same. (Lodgment at 1 & 331-32). The modification to the abstract
18 of judgment makes it clear that petitioner was convicted of premeditated attempted murder. More
19 importantly, the record unequivocally evidences that petitioner's offense was consistently
20 characterized as premeditated attempted murder for which he was subject to, and actually
21 received, a sentence of 20 years plus life with parole. (See id. at 5, 10 174, 176-77, 182, 194 &
22 196).
23      "The Supreme Court has stressed the narrow scope of the actual innocence exception."
24 Gandarela, 286 F.3d at 1087 (citing Schlup, 513 U.S. at 324, 115 S.Ct. at 865-66). Here,
25 petitioner's reliance on the underlying claims and the Bousley case "fails to open the gateway."
26 Id.
27      Because the Petition clearly is untimely under 28 U.S.C. § 2244(d)(1), dismissal with
28 prejudice is appropriate.

## RECOMMENDATION

For the foregoing reasons, IT IS RECOMMENDED that the District Court issue an Order:

(1) accepting and adopting this Report and Recommendation; and

(2) directing that judgment be entered denying the First Amended Petition and dismissing the action with prejudice.

Dated this 21 day of January, 2005.

　　　　　　　　　　　　　　　　　　　　　　　　　　/s/ Fernando M. Olguin
　　　　　　　　　　　　　　　　　　　　　　　　　　Fernando M. Olguin
　　　　　　　　　　　　　　　　　　　　　　　　　　United States Magistrate Judge

## NOTICE

Reports and Recommendations are not appealable to the Court of Appeals, but may be subject to the right of any party to file objections as provided in the Local Rules Governing the Duties of Magistrate Judges and review by the District Judge whose initials appear in the docket number. No notice of appeal pursuant to the Federal Rules of Appellate Procedure should be filed until entry of the judgment of the District Court.